UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAIREN PATRICK PITTMAN, #1200439,

    Petitioner,

v.                                          ACTION NO. 2:17cv232

HAROLD CLARKE,
Director of VA Dept. of Corrections,

    Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This case is before the Court on Dairen Patrick Pittman's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and respondent's motion to dismiss. This matter was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. For the following reasons, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 10, be GRANTED.

### I.    STATEMENT OF THE CASE

Dairen Patrick Pittman ("Pittman") is an inmate currently confined at Nottoway Correctional Center, part of the Virginia Department of Corrections. ECF No. 1 at 1; ECF No. 12. Pittman waived his right to a trial by jury and, following a bench trial, was convicted in the Circuit Court for Isle of Wight County on July 3, 2013 of one count of robbery, one count of grand larceny, one count of use of a firearm during the commission of a felony, one count of possession of a firearm by a convicted felon, and one count of wearing a mask in public.

ECF No. 1 at 1–2; ECF No. 11-2 at 2.[1]  On February 12, 2014, the circuit court sentenced Pittman to 48 years in prison with 31 years suspended. ECF No. 11 at 1.

Pittman appealed his conviction to the Court of Appeals of Virginia. ECF No. 11-1. The court of appeals summarized the evidence in the case as follows:

> On the night of August 11, 2011 JB's Food Mart in Isle of Wight County was robbed at gunpoint. The owner of the store gave a description of the suspect to police officers as "a black male, wearing big black clothes on, jacket, rubber bands on his arm and he was wearing a mask." The owner testified that the robber demanded money and handed him a "brown plastic bag." Deputy Hopko with the Isle of Wight Sheriff's Department responded to the scene of the robbery sometime that evening. Deputy Hopko reviewed the surveillance video and observed that the robber "was wearing a mask, black sweat pants, sneakers, rubber bands on his wrist and [that] he had a natural arch in his back. He was hunched over a little bit." On August 12, 2011, Deputy Hopko, along with several other officers, responded to a call reporting someone trying to cash in stolen lottery tickets that had been taken in a robbery the night before. Deputy Hopko found [Pittman] at the store in possession of the stolen lottery tickets, and [Pittman] claimed ownership of them.
>
> . . . .
>
> In addition to being in possession of stolen lottery tickets, Deputy Hopko observed that just prior to his arrest, [Pittman] was wearing the same sneakers observed in the surveillance video, he also had rubber bands on his wrist, and he had a hunch in his back.
>
> . . . .
>
> [Pittman] was transported to the sheriff's office where he was Mirandized. Upon his acknowledgement of his rights, [Pittman] was interviewed by several officers. Sergeant Rodney Riddle took [Pittman] outside for a "smoke." Sergeant Riddle testified that [Pittman]:
>
>> [e]xplained to me [that] he has [a] previous robbery conviction, and he didn't want to do time; he can't take it. I told Mr. Pittman, you can take it. Be upright about your involvement about what they're looking into, and take a lesson from your actions. We're all people, we all do things that aren't appropriate. He nodded in agreement when I made that statement with him. I said you made

---

[1] Pittman's petition indicates that he was convicted on August 11, 2011. In actuality, that was the date of the offense. See ECF No. 11-1 at 1.

2

>  mistakes last night, you robbed this JB store and this 7-Eleven. You made mistakes. And he repeated, yeah, man, and nod[]s his head.
>
> . . . .
>
> [Pittman] objected to the statement he made to Sergeant Riddle about his previous criminal charges. Specifically, he argued that in a criminal case prior bad acts cannot be admitted to prove bad character. The trial court sitting without a jury stated, "Well, I think I can sort that out, and [ ] that there was a previous armed robbery, that in and of itself is not evidence of anything."
>
> . . . .
>
> The trial court heard the testimony of several officers that [Pittman] matched the description of the person that robbed the JB's Food Mart at gunpoint. The evidence proved that [Pittman's] shoes, clothing, rubber bands on his arms, and physical hunch matched the robber in the surveillance video from JB's Food Mart. The trial judge also heard the testimony of a witness that testified she was with [Pittman] the night of the robbery and that she dropped [Pittman] off by JB's Food Mart and waited for him. When he returned to the vehicle he had a bag of money in his hands and a gun in his waistband.

ECF No. 11-1 at 1–5.

Pittman argued on appeal that (1) the trial court erred in not suppressing evidence obtained after Pittman's allegedly illegal arrest; (2) the trial court erred in admitting evidence of his prior robbery conviction; and (3) there was insufficient evidence for conviction. *Id.* On June 11, 2014, the court of appeals rejected all three arguments. *Id.* Pittman appealed to the Supreme Court of Virginia, which refused his appeal on November 25, 2014. ECF No. 1 at 2. Pittman filed a petition for rehearing, which the Virginia Supreme Court denied on March 6, 2015. ECF No. 11-4 at 8.

Pittman filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on July 5, 2016. ECF No. 1 at 3; ECF No. 11-2 at 1. Pittman's state petition alleged that his trial counsel was ineffective because he "knowingly allowed" Pittman to be tried while Pittman "was incompetent to stand trial." ECF No. 11-2 at 8. On December 8, 2016, the Supreme Court of

3

Virginia dismissed the habeas petition because it was not filed within one year from that court's refusal of Pittman's appeal on March 6, 2015, and was thus untimely under Va. Code Ann. § 8.01-654(A)(2).[2] ECF No. 1 at 26. On March 23, 2017, the Supreme Court of Virginia denied Pittman's petition for rehearing on his habeas claims. ECF No. 1 at 27.

Pittman then filed this federal habeas petition on May 1, 2017. ECF No. 1. In his federal petition, Pittman alleges the following grounds for relief:

(1) [Pittman] was denied his 6th and 14th Amendment Rights to effective assistance of Counsel, by Trial Counsel's failure to investigate and present relevant evidence of his dysfunctional childhood in support of his insanity defense.

(2) [Pittman] states that his Constitutional Claim was unfairly ignored and unreasonably denied by the Court[s] of the Commonwealth of Virginia by applying its procedural default Rule Bar, whereas he is entitled to Federal Habeas Relief.

ECF No. 1 at 30.

On October 20, 2017, the respondent filed an answer to the petition pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and a motion to dismiss the petition, along with a supporting memorandum.[3] ECF Nos. 9–11. On November 13, 2017, Pittman filed a response in opposition to the motion to dismiss. ECF No. 13.

---

[2] Section 8.01-654(A)(2) provides:

> A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

Va. Code Ann. § 8.01-654(A)(2).

[3] The motion to dismiss included a separately filed notice, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), providing Pittman with notice of how to timely respond thereto and the potential consequences for failing to do so. ECF No. 12.

4

## II. ANALYSIS

The time limit for the filing of a federal petition for habeas corpus is governed by 28 U.S.C. § 2244(d), part of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides, in pertinent part, that a one-year statute of limitations begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). This time period tolls when a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Pittman's petition was untimely filed. The Supreme Court of Virginia refused Pittman's direct appeal on November 25, 2014 and then his motion for a rehearing on March 6, 2015. Pittman had 90 days from entry of that final judgment to file a writ of certiorari to the United States Supreme Court. *See* Sup. Ct. R. 13(1). He did not do so, and his conviction became final on June 4, 2015. Under section 2244(d), he had until June 4, 2016 to file his federal petition, with such time being tolled during review of a properly filed state habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A), (d)(2).

Pittman filed his state habeas petition on July 5, 2016, after the statute of limitations to file his federal petition had already expired. Thus, even if Pittman's state petition were properly filed, statutory tolling could not operate to make his federal petition timely.[4]

Nevertheless, Pittman argues that he is entitled to equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been

---

[4] In any case, Pittman's state petition was not properly filed. The Supreme Court of Virginia dismissed Pittman's petition as untimely under Va. Code Ann. § 8.01-654(A)(2). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

5

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418.

Pittman argues that equitable tolling is appropriate for three reasons: (1) Pittman's attorney never informed him that the Supreme Court of Virginia had dismissed his case in the final instance on March 6, 2015, he thought that his appeal was still pending as of the filing of his state habeas petition, ECF No. 1 at 25; (2) he did not know that he had one year from March 6, 2015 to file his federal habeas petition, *id.* at 24; and (3) Pittman has a low IQ, and therefore "there can be no expectation that Pittman could follow the rules for a timely filing." ECF No. 13 at 3–4.

These arguments are unavailing. With respect to the first, Pittman noted in his state habeas petition that the Supreme Court of Virginia denied his appeal on November 25, 2014. ECF No. 11-2 at 2. He does not indicate any belief on his part that his appeal was still pending at that point. Rather, it appears that Pittman was under the apprehension that the November 25, 2014 denial was the final denial which, if true, would have rendered his federal petition late by an even greater amount of time.

Pittman's claims that his attorney never informed him that his motion for rehearing had been denied is also contradicted by the record. Pittman's appellate counsel, Adam M. Carroll ("Carroll"), submitted an affidavit with attached letters[5] showing his communications with Pittman. ECF Nos. 11-3, 11-4. In a letter from Carroll to Pittman, dated March 11, 2015, Carroll sent Pittman a copy of the Virginia Supreme Court's denial of Pittman's petition for rehearing, and offered to answer any questions Pittman had. ECF No. 11-4 at 7–10. In another

---

[5] Included with the letters are printouts of the metadata of the electronic versions of the letters, which purport to show when the letters were written.

6

letter, dated February 25, 2015, Carroll advised Pittman that he may seek habeas corpus relief if the Virginia Supreme Court denies his petition for a rehearing. ECF No. 11-4 at 4–6.

Pittman states that he "has proof that he was never notified [b]y either the Virginia Supreme Court or his Appellate Counsel," referencing the "incoming legal mail Prison log Book," ECF No. 1 at 36, but he never produces this proof.[6] In fact, when faced with the contradictory evidence in the Carroll affidavit, not only does Pittman not produce his purported proof, he abandons the argument altogether, instead arguing that his low IQ excuses him from the statute of limitations. *See* ECF No. 13. As for Pittman's second argument that he did not know he had one year to file his federal habeas petition, "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citing *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015 (8th Cir. 2003)). Pittman has not demonstrated the diligence or the exceptional circumstances outside his control to justify the application of equitable tolling in this instance.

Pittman's argument that his low IQ excuses him from the statute of limitations also misses the mark. "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." *Sosa*, 364 F.3d at 513 (citing *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998)). In *Grant*, the Ninth Circuit Court of Appeals noted that equitable tolling based on mental limitations has only been allowed in "exceptional circumstances, such as institutionalization or adjudged mental incompetence." *Grant*, 163 F.3d at 1138 (citing *Biester v. Midwest Health Servs.*, 77 F.3d 1264,

---

[6] Pittman also states that he sent numerous unanswered letters to both his counsel and the Virginia Supreme Court, but does not attach any such letters. *See* ECF No. 1 at 35–36.

1267–68 (10th Cir. 1996) (noting that the few courts that recognize an exception for mental incapacity have severely limited its application)).

Further, "mental incompetence is not a *per se* reason to toll the statute of limitations." *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008). "To prove entitlement to equitable tolling, a petitioner 'must make a threshold showing of incompetence and must also demonstrate that the alleged incompetence affected [his] ability to file a timely habeas petition.'" *Robison v. Hinkle*, 610 F. Supp. 2d 533, 539 (E.D. Va. 2009) (citing *McSwain*, 287 F. App'x at 456).

In his state habeas petition, Pittman claims that, "[o]n March 4, 2013, [in connection with a different case in Sussex County,] two (2) clinical psychologists declared [Pittman] to be legally incompetent to stand trial"[7] and that he takes psychotropic medication. ECF No. 11-2 at 8. Following that adjudication, he was sent to Central State Hospital. *Id.* While at Central State Hospital, on May 15, 2013, Pittman underwent an evaluation to determine if his competency to stand trial was restored. ECF No. 11-5. That restoration evaluation not only determined that Pittman "me[t] the criteria for competence to stand trial," but cast doubt on the initial incompetence adjudication. *Id.* at 4–5. For example, in his first evaluation, Pittman was determined to be "incompetent to stand trial due to his basic lack of factual knowledge of the criminal justice system." *Id.* at 2. However, upon a second evaluation, Pittman's outpatient evaluators observed that "Mr. Pittman's level of ignorance about court was not believable."[8] *Id.* Later, Pittman's treating physician, David Albright, M.D., "noted that [Pittman's] insistence on

---

[7] Respondent argues that Pittman did not identify the psychologists who initially opined that he was incompetent. While true, those two psychologists (Elizabeth M. A. Wheeler, Ph.D., and Evan S. Nelson, Ph.D.) are identified in the restoration evaluation attached to respondent's own motion to dismiss. ECF No. 11-5 at 2.

[8] Later, when speaking with evaluators, Pittman demonstrated a competent knowledge of the criminal justice system and of the relevant actors in his case. ECF No. 11-5 at 3–5.

8

receiving medications was likely an attempt to feign a mental illness."[9] *Id.* With respect to the psychotropic drugs Pittman receives, the evaluation clearly explains that those are prescribed "'NOT for a psychotic process, but for behavior issues, i.e. aggression.'" *Id.* Ultimately, the evaluation concluded that Pittman "is not thought to be suffering from acute symptoms of a mental illness which might impair his competency to stand trial [and] had an adequate understanding of his charges, an appreciation of the possible legal outcomes and a rational understanding of the adversarial nature of the proceedings against him, as well as the capacity to work with an attorney in his own defense." *Id.* at 4.

In sum, Pittman does not meet the high bar established for equitable tolling based on mental illness. While he was once held incompetent, his competency was restored just a few months later. Pittman has not made a threshold showing of his incompetence, and has not connected any mental impairment to his failure to file a timely petition. Rather, he merely argues that his mental incompetence is a *per se* reason to toll the statute of limitations. It is not.

### III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 9, be GRANTED, and the petition for a writ of habeas corpus, ECF No. 1, be DENIED and DISMISSED with PREJUDICE.

---

[9] This is not the only indication in the record that Pittman was attempting to feign mental illness to avoid trial. When seen by an evaluator on May 13, 2013, Pittman immediately stated, "I want to ask about that NGRI [(not guilty by reason of insanity)] thing. Can I get that?" ECF No. 11-5 at 3. Carroll's affidavit states that "Mr. Pittman at one point asked what he would have to do to have the court find that he is crazy and not able to stand trial. I remember this because it was the first time in my career that I had to admonish a client for soliciting me to generate a misrepresentation to the court." ECF No. 11-3 at 2.

## IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within 14 days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within 14 days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/
Robert J. Krask
United States Magistrate Judge
Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
February 1, 2018